**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VEINTE DOE, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 26-3308** |

**MEMORANDUM OPINION AND ORDER**

Born in Iran, Plaintiff Veinte Doe moved to the United States in 2016 and has been a naturalized citizen since 2023. See ECF No. 1 (Compl.), ¶¶ 9–10. He is a well-known actor, writer, and director who spoke out against the Islamic Republic of Iran on social media in 2022 and has since faced punishment and a campaign of intimidation and retaliation for his speech. Id., ¶¶ 2–6. Plaintiff Veinte Uno Doe — who was born in Iran and naturalized as a citizen of the United States in 2009 — is his wife. Id., ¶¶ 2, 12. Plaintiff Veinte Dos Doe is their son and was born in California in 2013. Id., ¶¶ 2, 13.

In Plaintiffs' telling, Defendants initially punished Veinte Doe in Iran, torturing him and taking his relatives hostage to "compel him to abandon his public criticism of the Islamic Republic." Id., ¶ 6. Afterward, they continued to pursue him and his family in the United States through "proxies, intermediaries, and paid operatives, coordinated with a parallel campaign of [media] vilification." Id., ¶¶ 3, 5; see also ECF No. 4 (Mot.) at 3–4. For example, Plaintiffs report a stone thrown through their window, confrontations in a supermarket, a car chase, attempted vehicle collisions, verbal threats, physical interference with Veinte Dos Doe followed

by a threatening note, and an arson plot targeting a cultural institute founded by Veinte Doe. See Compl., ¶ 4; see also Mot. at 4–6.

Plaintiffs thus sued Iran for damages under the Foreign Sovereign Immunities Act, with Veinte Dos Doe suing by and through his mother. See Compl., ¶ 13. They now move to proceed pseudonymously. See generally Mot. The Court will grant their Motion.

## I. Legal Standard

Generally, a complaint must identify the plaintiffs. See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1). That requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings." In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)). A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name." In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020). As a result, the court must "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure" by applying a "flexible and fact driven" balancing test. Id. (quoting In re Sealed Case, 931 F.3d at 96). That test assesses "five non-exhaustive factors":

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or, even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;

> (4) whether the action is against a governmental or private party; and relatedly;
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (cleaned up).

## II. Analysis

Plaintiffs have shown that their interest in pseudonymity outweighs the public's interest in learning their identities.

First, as the Complaint makes clear, Plaintiffs do not seek to proceed under pseudonyms "merely to avoid the annoyance and criticism that may attend any litigation," but to "preserve privacy in a matter of [a] sensitive and highly personal nature." Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97) (alteration in original). Relevant here, privacy can include "maintaining [Plaintiffs'] and their family members' safety." Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023); see also R.A. v. Islamic Republic of Iran, No. 23-2606, ECF No. 4 (Mem. Op. & Order) at 3 (D.D.C. Sept. 12, 2023) (determining that history of "severe violence and threats . . . at the hands of proxy militia organizations" shows that "Plaintiffs seek to avoid much graver harms than mere annoyance and criticism").

Plaintiffs' aforementioned allegations of violence and threats against them and their relatives — including torture and detention in Iran and threats on the child's life in the United States, see Mot. at 7; Compl., ¶¶ 4, 6 — are more than sufficient to tip this first factor in their favor. In particular, their pleadings demonstrate that they have an interest in "preserving privacy to protect" the family's "safety from third-party proxies" who "might seek to harm Plaintiff[s] on their own accord," not just at the direction of Defendants. Farshid Do v. Islamic Revolutionary Guard Corps, 2026 WL 980758, at *2 (D.D.C. Apr. 13, 2026); see Compl., ¶ 5 ("[T]hey used proxies . . . coordinated with a parallel campaign of vilification . . . [that] marked [Veinte Doe]

and his family for anyone willing to act.") (emphasis added). In addition, as Plaintiffs note, the sensitive nature of the information about Veinte Dos Doe, including descriptions of "the psychological effects of the [retaliation] campaign on him," see Mot. at 8, lends their request additional support under this factor.

The second factor — the risk of retaliatory harm — is closely related to the first and likewise weighs in favor of pseudonymity. Plaintiffs allege that the conduct described above was carried out in retaliation against Veinte Doe's public criticism of the Iranian government. See Compl., ¶¶ 60–96. Such "campaign[s] against dissidents abroad," they note, are well documented. See Mot. at 8 (citing Elahi v. Islamic Republic of Iran, 124 F. Supp. 2d 97, 100–05 (D.D.C. 2000); and Bakhtiar v. Islamic Republic of Iran, 571 F. Supp. 2d 27, 30 (D.D.C. 2008), aff'd, 668 F.3d 773 (D.C. Cir. 2012)). Specific to their case, Plaintiffs allege that "non-defendant prox[ies]" continue to pursue them and that publicly identifying them in this litigation would increase their "visibility" and raise the risk of future harm to the whole family, including relatives still living in Iran. Id. at 8–9. The "risk of retaliatory . . . harm to" Plaintiffs and "to innocent non-parties" thus supports letting Plaintiffs proceed pseudonymously. In re Sealed Case, 971 F.3d at 326 (quotation marks omitted).

The third factor also supports pseudonymity because disclosure of Plaintiffs' names would implicate the privacy interests or safety of a minor — namely, Veinte Dos Doe. Not only would publication of his own name compromise his privacy and safety, but disclosure of his parents' identities could do so, too. See R.A., Mem. Op. & Order at 4 (finding that this factor favored motion "to some extent" where "Plaintiffs indicate that one of them is a minor, and revealing the other Plaintiffs' identities risks undermining the anonymity of that person"); see also J. v. District of Columbia, No. 23-1279, ECF No. 3 (Mem. Op. & Order) at 4 (D.D.C. May

9, 2023) (finding that this factor favored pseudonymity because adult Plaintiffs "share common privacy interests with their minor child due to their intractably linked relationship") (cleaned up).

Factor four, the identity of the defendants, favors pseudonymity when a plaintiff sues a government for individualized relief. Doe v. Rubio, 2025 WL 3522731, at *2 (D.D.C. Dec. 9, 2025). This suit fits the bill. Plaintiffs are suing the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps, see Compl., ¶¶ 16–28 — both governmental entities — as well as officials, employees, agents, proxies, contractors, and intermediaries of said governmental entities (Does 1–50). Id., ¶¶ 29–30. Furthermore, they seek compensatory, economic, and punitive damages, id. at 29–30 (prayer for relief), which are forms of individualized relief.

Fifth and finally, letting Plaintiffs proceed pseudonymously will not prejudice Defendants. Plaintiffs plan to file their true identities under seal for *in camera* inspection and have acknowledged that "the Court retains authority to order disclosure if circumstances change." Mot. at 11; see also J.K.A. v. United States, 2023 WL 12248425, at *3 (D.D.C. Aug. 10, 2023) (noting that when plaintiff offers to file identifying information under seal, this factor supports pseudonymity). And to the extent that Defendants already know their identities, such knowledge does not undercut Plaintiffs' request for pseudonymity under this factor. See Mot. at 11–13; see also Doe v. Fed. Republic of Germany, 680 F. Supp. 3d 1, 6 (D.D.C. 2023) ("Defendants would suffer no risk of unfairness if the Motion were granted, given Plaintiff's claim that they already know Plaintiff's true identity.") (cleaned up). Defendants thus do not face a risk of unfairness. They remain free to request any further information they deem necessary to the full defense of this case or to ask the Court to reconsider this decision.

The Court highlights that this is an initial decision to permit Plaintiffs to proceed pseudonymously. If Defendants appear to defend this suit, the balance of factors might tip the

other way. See Doe I v. Sabeti, 2025 WL 4348642, at *1 (M.D. Fla. Aug. 12, 2025) (reconsidering initial grant to proceed pseudonymously in Torture Victim Protection Act case upon defendant appearance). In any event, Plaintiffs have made an initial showing that their concerns extend beyond Defendants' learning their identities to the risk that third parties could obtain this information and act on Defendants' behalf to harm them. See Mot. at 12 (citing Farshid Do, 2026 WL 980758, at *2).

In sum, all the factors weigh in favor of granting Plaintiffs' Motion to Proceed Under Pseudonym. The Court will thus grant Plaintiffs' Motion, subject to reconsideration by the District Judge to whom this case is randomly assigned.

The Court accordingly ORDERS that:

1. Plaintiffs' [4] Motion for Leave to Proceed Under Pseudonym is GRANTED, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;
2. All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action; and
3. Within fourteen days of this Order, Plaintiffs shall file:
   i. A pseudonymous version of their [4] Motion on the public docket; and
   ii. A sealed *ex parte* declaration containing their real names and residential addresses.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 2, 2026